

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | I N D I C T M E N T |
| | ) | |
| Plaintiff, | ) | CASE NO. 4 : 13 CR 033 |
| | ) | |
| v. | ) | JUDGE |
| | ) | |
| ROLANDO SEPULVEDA, | ) | Title 18, Section 1347, United States |
| | ) | Code |
| Defendant. | ) | |

The Grand Jury charges:

## I. BACKGROUND

At all times material to this Indictment:

### Defendant

1.      Defendant ROLANDO SEPULVEDA was the owner of Med Transportation, Inc. (Med Trans), an ambulette company. The business address was 3437 McCartney Road, Youngstown, Ohio 44505, within the Northern District of Ohio, Eastern Division.

2.     Defendant ROLANDO SEPULVEDA was in charge of scheduling and billing the transportation services provided by Med Trans.  At times Defendant ROLANDO SEPULVEDA also was a driver for Med Trans transporting Medicaid recipients.

The Medicaid Program and Ambulettes

3.     Medicaid provided medical insurance coverage for the poor under the Social Security Act (42 U.S.C. §1396 et seq.).  Medicaid was administered in Ohio by the Ohio Department of Job and Family Services (ODJFS).  Federal funds paid for 60% of Ohio Medicaid benefits; the State of Ohio funded the remainder.  Ohio Medicaid was a federal health benefit program within the meaning of 18 U.S.C. § 1347.

4.     On or about June 5, 2008, ODJFS received a written Provider Application from Med Trans to become a Medicaid provider of ambulette transportation services in the State of Ohio.  Defendant ROLANDO SEPULVEDA signed the agreement as the Owner of Med Trans. The agreement provided that Med Trans could bill Medicaid only for ambulette transportation that complied with federal and state laws.

5.     Ohio Administrative Code Chapter 5101, which governed ambulette transportation, provided that:

        a.     An "ambulette" was a vehicle designed to transport individuals sitting in wheelchairs.  It had, at a minimum, permanent fasteners to secure the wheelchair to the inside of the vehicle, rider restraints, a stable access ramp or hydraulic lift, company identification on both sides or the rear of the vehicle, and a ceiling-to-floor height of 56 inches.

2

b.    An "attending practitioner" was a licensed doctor of medicine, osteopathy or podiatry, or an advance practice nurse, who provided ongoing care and treatment to the transported individual and could certify that the person was non-ambulatory, had medical need for ambulette transport, and for how long.

c.    A "non-ambulatory" person had a permanently or temporarily disabling condition that precluded transportation in a vehicle not modified or created for transporting such a person.

d.    Ohio Medicaid reimbursed a provider for ambulette transportation only if:

    i.    the recipient's attending practitioner certified that it was medically necessary,

    ii.    the attending practitioner certified that the recipient was non-ambulatory, could be transported in a wheelchair, and did not need an ambulance,

    iii.    the recipient was transported in a wheelchair,

    iv.    the vehicle used was an ambulette, and

    v.    transport was to or from a Medicaid covered service.

e.    The provider was required to keep documentation of compliance with conditions of reimbursement.

f.    The provider was required to obtain an Ambulette Certification of Medical Necessity (CMN) completed, dated and signed by the Medicaid recipient's

3

attending practitioner.  The CMN was required to state the medical condition that rendered the recipient non-ambulatory and certify that ambulette transport was medically necessary.  The provider was required to obtain the CMN before claiming payment from Medicaid.

g.    If the attending practitioner certified that the recipient was temporarily non-ambulatory, the attending practitioner was required to certify how long ambulette transport was necessary.  The CMN was then valid for that length of time.  If the period exceeded 90 days the provider was required to obtain a new CMN.

h.    If the attending practitioner certified that the recipient was permanently non-ambulatory, the CMN was valid for one year from the first ambulette transport.

i.    The CMN was valid as long as the recipient remained non-ambulatory.  If the provider noted a change in ambulatory status, it was required to obtain a new CMN from the attending practitioner.  The CMN was non-transferable from one provider to another.

j.    In addition to the CMN, the provider was required to maintain documentation of dates of service, times and addresses of pick up and drop off, the driver's and attendant's full names, the recipient's full name and Medicaid number, vehicle identification, the full name of the Medicaid-covered service provider, and mileage.

4

k.  Transportation services were billed for the pick-up and drop-off of a Medicaid recipient, accompanying mileage, and for any additional appropriate and justified services, such as use of an extra attendant necessary for the transportation service. Each discrete service was designated a specific code by ODJFS. "A0130" was the code used to designate a basic transportation service, indicating the transportation service actually occurred. "S0209" was the code used to designate the mileage of the transportation service. "T2001" was the code used to designate a non-emergency transportation attendant/escort. These billing codes were well known to the medical community, providers, and health care insurance companies.

l.  "Attendant" was defined in the Ohio Administrative Code as an individual employed by the transportation provider, who was separate and distinct from the basic crew of the transporting vehicle, and who met the qualifications specified in paragraph (B)(2) of Rule 5101:3-15-02 of the Ohio Administrative Code for ambulance, and paragraph (C)(3) of Rule 5101:3-15-02 of the Ohio Administrative Code for ambulette, and who was present to aid in the transfer of Medicaid patients who met the criteria for receipt of transportation services.

5

## II. THE FRAUDULENT SCHEME

6.      From on or about August 27, 2008, through on or about August 15, 2011, Defendant ROLANDO SEPULVEDA did devise and intend to devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises.

7.      It was a part of the scheme and artifice to defraud that Defendant ROLANDO SEPULVEDA, through his ambulette company, transported Medicaid recipients that did not require or use a wheelchair, although Defendant understood that Medicaid only provided reimbursement for those recipients who required the assistance of wheelchairs and were actually transported in wheelchairs.

8.      It was a further part of the scheme and artifice to defraud that Defendant ROLANDO SEPULVEDA, through his ambulette company, failed to obtain CMNs from Medicaid recipients his company transported, although Defendant understood that Medicaid required a CMN for each Medicaid recipient.

9.      It was a further part of the scheme and artifice to defraud that Defendant ROLANDO SEPULVEDA, through his ambulette company, submitted claims to Medicaid purporting to have transported Medicaid recipients in vehicles modified to safely transport someone in a wheelchair, when in fact he did not transport all Medicaid recipients for whom he billed services in properly modified vehicles.

6

10.     It was a further part of the scheme and artifice to defraud that Defendant

ROLANDO SEPULVEDA billed for the services of an extra attendant using the T2001 attendant

code when no attendant was used or required for the transportation.

11.     It was a further part of the scheme and artifice to defraud that Med Trans received

over $406,000.00 from ODJFS/Medicaid to which it was not entitled.

Counts 1 - 7
(Health Care Fraud)

The Grand Jury further charges:

12.     The Grand Jury realleges and incorporates by reference the allegations set forth

in paragraphs 1 through 11 of the Indictment as if fully set forth herein.

13.     From on or about August 27, 2008, through on or about August 15, 2011, in the

Northern District of Ohio, Eastern Division, and elsewhere, Defendant ROLANDO

SEPULVEDA knowingly and willfully executed, and attempted to execute, a scheme and artifice

to defraud the Medicaid health care benefit program, and to obtain, by means of false and

fraudulent pretenses, representations and promises described herein, money and property owned

by, and under the custody and control of, a health care benefit program, Ohio Medicaid, in

connection with the delivery of and payment for health care benefits, items and services.

14.     On or about the dates listed below, in the Northern District of Ohio and elsewhere,

Defendant ROLANDO SEPULVEDA, having knowingly and willfully executed and attempted

to execute the scheme and artifice to defraud the Ohio Medicaid program described above, and to

obtain money, by means of the false and fraudulent pretenses, representations and promises

described above, did execute and attempt to execute the scheme by submitting the claims for

7

reimbursement set forth below:

| Count | Date of Claim | Amount of Claim | Health Care Benefit Program / Beneficiary |
|-------|---------------|------------------|-------------------------------------------|
| 1 | 10/15/2009 | $45.27 | Medicaid / S. S. |
| 2 | 3/24/2010 | $63.50 | Medicaid / J. B. |
| 3 | 7/29/2010 | $105.34 | Medicaid / J. H. |
| 4 | 10/13/2010 | $48.40 | Medicaid / D. B. |
| 5 | 3/10/2011 | $68.84 | Medicaid / J. A. |
| 6 | 4/7/2011 | $61.60 | Medicaid / D. A. |
| 7 | 6/22/2011 | $71.28 | Medicaid / P. R. |

All in violation of Title 18, United States Code, Section 1347.

A TRUE BILL.

Original document -- Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.

8